UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LEARTIS J. JOHNSON,

        Plaintiff,

v.                                                    CASE No. 8:23-cv-547-TGW

MARTIN J. O' MALLEY,
Commissioner of Social Security,[1]

        Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for supplemental security income payments.[2]   Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not identified any reversible error, the decision will be affirmed.

### I.

The plaintiff, who was forty-seven years old at the time of the administrative hearing and who has a high school education, has no past

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023, and should be substituted as the defendant.   See Fed. R. Civ. P. 25(d).

[2] The parties consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 10).

relevant work (Tr. 24, 259). He filed a claim for supplemental security income payments, alleging that he became disabled due to mental issues, bipolar disorder, OCD (obsessive compulsive disorder), depression, psychological treatment, mild scoliosis, back problems, stenosis, and pre-diabetes (Tr. 258). The claim was denied initially and upon reconsideration.

At his request, the plaintiff received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of disorder of the lumbar and thoracic spine, bipolar (depressive) disorder, and obsessive compulsive disorder (Tr. 14). The law judge concluded that, with these impairments, the plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to occasional pushing and pulling with the bilateral lower extremities; occasional postural activity, except the claimant can never climb ladders, ropes, or scaffolds; no more than frequent reaching with a bilateral upper extremities; no more than occasional exposure to extreme cold, humidity, and workplace hazards, such as unprotected heights and moving machinery; no exposure to vibration; no exposure to more than moderate noise intensity as the term moderate is defined in the Selected Characteristics of Occupations; understanding and remembering simple and detailed instructions, and carrying out simple instructions to perform simple, routine, repetitive tasks; and, is limited to no more than

2

occasional    interaction    with    coworkers, supervisors, and the general public.

(Tr. 16).

As stated, the law judge found that the plaintiff had no past relevant work (Tr. 24).    However, based on the testimony of a vocational expert, the law judge determined that, despite the plaintiff's functional limitations, there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as Checker I, Office Helper, and Order Caller (Tr. 25). Consequently, the law judge decided that the plaintiff was not disabled (Tr. 26). The Appeals Council denied review, so that the law judge's decision became the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months."    42 U.S.C. 1382c(a)(3)(A).    A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.   42 U.S.C. 405(g).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).   Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."   Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.   Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).   Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported

by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff asserts that (1) the law judge's finding that he could perform light work was not supported by substantial evidence and (2) the law judge erred by not accepting the opinions of the consulting examiners who essentially opined that the plaintiff was disabled (Doc. 11, pp. 3, 11). The plaintiff's contentions are not meritorious.

A.   The plaintiff's first argument is broadly titled, "[w]hether the ALJ's finding that [the plaintiff] could perform light work was supported by substantial evidence" (<u>id</u>., p. 3). However, the plaintiff is actually challenging the law judge's credibility determination. Specifically, the

5

plaintiff argues that "the reasons given by the ALJ … do not amount to substantial evidence to reject [the plaintiff's] allegations of disabling pain" (id., p. 11). The defendant responds, meritoriously, that the law judge "articulated explicit and adequate reasons for discounting Plaintiff's subjective complaints of disabling symptoms" (Doc. 17, p. 7).

It is well-established that the responsibility for credibility determinations is reposed in the Commissioner and his determination is entitled to deference.    Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). Consequently, to overturn the Commissioner's credibility finding, the plaintiff must demonstrate that the evidence compels the contrary finding. Adefemi v. Ashcroft, supra, 386 F.3d at 1027. The plaintiff's criticisms of the credibility finding do not amount to such a showing.

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of

6

such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge discounts the claimant's testimony concerning subjective complaints, she must articulate explicit and adequate reasons for doing so. Dyer v. Barnhart, supra, 395 F.3d at 1210.

The law judge appropriately applied the pain standard and articulated adequate reasons for her credibility determination. She accurately summarized the plaintiff's reports of disabling pain and functional limitations, stating that she

> .... considered the claimant's written allegations that joint pain, pinching, soreness, tenderness, and weakness aggravate his lower back, hips, and inner thighs, and the allegations that sitting exacerbates his pain and soreness, while stretching, physical therapy, and medication are effective in relieving pain (E1E, E5E). The claimant indicates that weakness in his hips, thighs, and legs, as well as general joint pain, cause him to become distracted and lose focus.... The claimant also indicated that swelling and numbness occur as medication side effects, and also indicated that spontaneous, uncontrolled interruptions, and care for his mother limit his ability to engage in physical therapy (see E5E/2).

(Tr. 17).   Furthermore, the law judge considered the plaintiff's hearing testimony "that he is unable to work because of low back pain and 'deterioration,' and . . . that his right foot problems continue to worsen with

7

pins and needles, which he experiences when standing up, walking, and laying down" (id.).

The law judge found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (Tr. 18).

Significantly, the law judge found that the plaintiff had severe impairments that substantially limited his physical residual functional capacity (RFC) to a reduced range of light work (Tr. 16). Thus, the law judge only rejected the plaintiff's allegations of debilitating symptoms.

Furthermore, the law judge gave a cogent explanation for discounting the credibility of the plaintiff's subjective complaints of incapacitating pain and functional limitations (see Tr. 17-20, 23-24). That finding is supported by substantial evidence.

Specifically, the law judge found that the medical evidence shows that the plaintiff's spinal impairment causes limitations, "as evidenced by positive examination findings, but not to the extent alleged" by the

8

plaintiff (Tr. 18).   In making this finding, the law judge considered the plaintiff's MRI results, including moderate to very severe stenosis at L5-S1 and L4-L5, and abnormalities on physical examinations (see Tr. 18-20, 23, 24).

On the other hand, the law judge discussed that many findings on clinical examinations were within normal limits and not consistent with the plaintiff's allegations of disabling physical limitations. See 20 C.F.R. 416.929(c)(2) ("Objective medical evidence.... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of symptoms and the effect those symptoms ... may have on [a plaintiff's] ability to work"); Belle v. Barnhart, 129 Fed. Appx. 558, 560 (11th Cir. 2005) (Normal findings on examination are relevant to whether the plaintiff's allegations of debilitating impairments are credible.).

For instance, the law judge summarized that, despite the plaintiff's allegations of disabling pain and functional limitations, "November 2019 to August 2021 treatment records indicate the claimant walked independently, no spine or peripheral joint deformities were observed, and the claimant appeared to have full range of motion in the upper and lower extremities and spine" (Tr. 19) (citations omitted).

Furthermore, the law judge recounted that, at a September 2021, consultative examination the plaintiff's

> gait and station were normal. . . . the claimant's extremities were unremarkable, with no clubbing an[d] no cyanosis, and the claimant's motor strength was 5 out of 5 in all four extremities. Straight leg raising was negative, bilaterally, in both seated and supine positions. The claimant's grip strength and manual dexterity were within normal limits. Cervical and lumbar spine range of motion was normal, as were range of motion in the claimant's hips, knees, ankles, feet, as well as shoulders, elbows, wrists, and hands.

(id.). Moreover, the law judge noted that, at a physical therapy examination in May 2022, the plaintiff's "bilateral lower extremity strength was unremarkable, sensation was grossly intact, and balance and gait were normal" (Tr. 20).

The law judge's conclusion that the medical evidence was not consistent with debilitating physical limitations is buttressed by the opinions of state reviewing physicians, Dr. Prianka Gerrish, M.D., and Dr. Sharka Junejo, M.D., who opined that the plaintiff could perform a range of light work. See 20 C.F.R. 416.913a(b)(1) (State reviewing physicians "are highly qualified and experts in Social Security disability evaluation."); 20 C.F.R. 416.920c(c)(5) (A reviewing physician's "understanding of our disability

10

program's policies and evidentiary requirements" may provide further support for a medical opinion.). The law judge gave these opinions some weight (see Tr. 23).

Moreover, the law judge appropriately considered the plaintiff's activities of daily living in determining the credibility of the plaintiff's allegations of disabling pain. See 20 C.F.R. 416.929(c)(3)(i); Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987) (Activities of daily living are relevant to determining credibility.); Pennington v. Commissioner of Social Security, 652 Fed. Appx. 862, 872–73 (11th Cir. 2016) (An ALJ may rely on a claimant's daily activities in making credibility determinations.).

The law judge considered that, not only was the plaintiff capable of taking care of himself (e.g., performing personal care, driving, shopping, preparing meals and completing household chores), but that he was also a full-time caretaker for his mother (Tr. 15, 17, 22, 24). The law judge noted:

> …. [T]he claimant reported he was seeking SSI to help with the care he gives his mother, as she depends on him completely for activities of daily living (E7F/55). August 2021 … notes also indicate the claimant reported being busy taking his mother to doctor appointments (Id. at 71).

11

(Tr. 24) (emphasis added). Specifically, the plaintiff is a paid DCF caretaker for his mother who is on oxygen, experiences seizures, and cannot get around well (Tr. 49-50, 242). The plaintiff explained that he provides "round-the-clock service [and] attention" to his mother (Tr. 287).

The law judge could reasonably find the plaintiff's activities, which uniquely include full-time caretaking for his mother, are inconsistent with the plaintiff's allegations of disabling physical functional limitations. See, e.g., Moore v. Barnhart, supra, 405 F.3d at 1212 (Upholding a credibility determination where the law judge "relied on the inconsistencies between [the plaintiff's] descriptions of her diverse daily activities and her claims of infirmity"); Matos v. Commissioner of Social Security, No. 21-11764, 2022 WL 97144 at *7 (11th Cir. Jan. 10, 2022) (The ALJ reasonably relied in rejecting the credibility of the plaintiff's allegations of disabling pain that she engaged in a variety of daily living activities such as independent dressing and grooming, cooking, cleaning, shopping, driving, going on family vacations, and taking care of her family.).

The plaintiff, notably, does not acknowledge, much less undermine, the law judge's consideration of the plaintiff's activities of daily

12

living in determining his credibility.

In sum, substantial evidence supports the law judge's determination that the plaintiff's subjective complaints of disabling pain and functional limitations are not credible to the extent that they exceed the law judge's determination of the plaintiff's RFC. See Richardson v. Perales, 402 U.S. 389, 401 (1971) (Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

The plaintiff argues that the law judge mischaracterized the objective evidence as "'mild to moderate lumbar spinal impairment'" despite diagnoses of moderate to severe abnormalities at the L5-S1 and L4-L5 levels (Doc. 11, pp. 7-9). The plaintiff is incorrect; the law judge accurately recounted the plaintiff's diagnoses (Tr. 18-19) and made the distinct finding that the resulting degree of impairment was mild to moderate.

It is well-established that it is the functional limitations from an impairment, and not the diagnosis of an impairment, that is determinative in an evaluation of disability. See Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005), quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient" to show

13

disability because the plaintiff "must show the effect of the impairment on her ability to work."). For example, state reviewing physician Dr. Junejo considered the plaintiff's diagnoses of moderate to severe disc desiccation but opined that the plaintiff retained the residual functional capacity to perform a reduced range of light work (Tr. 158). The plaintiff does not identify a credited physician's opinion compelling a finding that these diagnoses cause greater physical functional limitations, much less establish that he is physically disabled. See Wind v. Barnhart, supra, 133 Fed. Appx. at 690; Raper v. Commissioner of Social Security, 89 F.4th 1261, 1275, 1278-79 (11th Cir. 2024) (It is the plaintiff's burden to prove he is disabled.).

The plaintiff also argues that the law judge improperly considered the plaintiff's normal clinical findings, arguing that the law judge "may not establish a set of specific objective medical evidence that must be present, i.e., abnormal motor strength, loss of sensation, and abnormal reflexes, before a claimant can be found disabled" (Doc. 11, pp. 10-11). This contention is baseless.

The law judge's credibility determination was not based solely on these findings. Furthermore, it is clearly reasonable, and the regulations direct, that the law judge consider normal clinical findings in determining

whether allegations of debilitating pain and functional limitations are credible. See 20 C.F.R. 416.929(c)(2); see, e.g., Raper v. Commissioner of Social Security, supra, 89 F.4th at 1278-79 (The law judge properly considered clinical examination findings such as good strength in lower extremities, normal gait, and ambulation without assistive devices in discounting credibility); Epps v. Social Security Administration Commissioner, No. 22-13674, 2024 WL 20837 at *7 (11th Cir. Jan. 2, 2024) (The law judge may consider in determining the credibility of the plaintiff's complaints of disabling back pain that her strength, gait, range of motion, and sensory and motor skills were not significantly impaired).[3]

Finally, the plaintiff contends that the law judge relied erroneously on a May 13, 2020, treatment note that the plaintiff's back pain "was stable" on medication, contending that "statements like 'stable' are not to be mistaken for 'cured' or 'no longer disabling'" (Doc. 11, p. 10). This contention is frivolous. The RFC reflects substantial limitations. Furthermore, the law judge found, based on evidence generated after that

---

[3] The plaintiff also misleadingly argues that "full range of motion in his hips should not rule out disability" because his pain came primarily from his back (Doc. 11, p. 11). This clinical finding obviously was not dispositive of the law judge's credibility determination. Furthermore, the plaintiff repeatedly complained that he suffered from hip pain that affected his physical functioning (Tr. 45, 57, 58, 305). Therefore, this finding is relevant.

treatment note, that the plaintiff's condition had worsened and, correspondingly, she included additional functional limitations in the RFC (Tr. 23).

In sum, the plaintiff's disagreement with the law judge essentially is a difference of opinion as to the weight to be given to certain circumstances. However, it is not enough for the plaintiff to identify medical findings that support his allegations because "[t]he weighing of evidence is a function of the factfinder, not of the district court." Graham v. Bowen, 790 F.2d 1572, 1575 (11th Cir. 1986). Thus, the Commissioner's decision will be affirmed "if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it." Vergara v. Commissioner of Social Security, No. 22-11671, 2023 WL 5814433 at *3 (11th Cir. Sept. 8, 2023) citing Buckwalter v. Acting Commissioner of Social Security, 5 F.4th 1315, 1320 (11th Cir. 2021). Therefore, this argument fails.

B. The plaintiff's second argument is that substantial evidence does not support the law judge's rejection of the opinions of two psychological consultative examiners and the consultative physician that the plaintiff was essentially disabled (Doc. 11, pp. 11-25).

This claim was filed on or after March 27, 2017, and thus, the

new regulations governing the assessment of medical opinion evidence

apply. Those regulations change established principles in the Eleventh

Circuit concerning the evaluation of medical opinions.

> Courts reviewing claims under our current rules
> have focused more on whether we sufficiently
> articulated the weight we gave treating source
> opinions, rather than on whether substantial
> evidence supports our final decision. As the
> Administrative Conference of the United States'
> (ACUS) Final Report explains, these courts, in
> reviewing final agency decisions, are reweighing
> evidence instead of applying the substantial
> evidence standard of review, which is intended to
> be highly deferential standard to us.

Revision to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.

Reg. 5844-01, 5853, 2017 WL 168819 (Jan. 18, 2017).

> Accordingly, the regulations now state (20 C.F.R. 416.920c(a)):

> We will not defer or give any specific evidentiary
> weight, including controlling weight, to any
> medical opinions(s) or prior administrative
> medical finding(s), including those from your
> medical sources.

Rather, medical opinions and prior administrative medical findings are to be

considered for their persuasiveness based upon the following factors:

(1) Supportability
(2) Consistency
(3) Relationship with the claimant [including]
    (i) Length of the treatment relationship

      (ii)    Frequency of examinations
      (iii)   Purpose of the treatment relationship
      (iv)   Extent of the treatment relationship
      (v)    Examining relationship
  (4) Specialization
  (5) Other factors

20 C.F.R. 416.920c(c)(1)–(5).

Supportability and consistency are the two most important factors. 20 C.F.R. 416.920c(a); 20 C.F.R. 416.920c(b)(2). Indeed, law judges are not even required to explain how they considered factors 3 through 5, 20 C.F.R. 416.920c(b)(2), unless the record contains differing, but equally persuasive, medical opinions or prior administrative medical findings about the same issue. 20 C.F.R. 416.920c(b)(3).

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. 416.920c(c)(1).

"Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim,

the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."   20 C.F.R. 416.920c(c)(2).

The new regulations also provide that where the record contains multiple medical opinions or prior administrative medical findings from a single medical source, the law judges are not required to articulate how they considered each medical opinion or prior administrative medical finding, but it is sufficient if there is a single analysis of the factors. 20 C.F.R. 416.920c(b)(1).

1. Psychological consultative examiners.

The plaintiff argues that the law judge's rejection of the extreme opinions of psychological consultative examiners Dr. Nicholas Gehle and Dr. Sally Stader are not supported by substantial evidence (Doc. 11, pp. 13-22). This argument is unavailing.

The law judge found that the plaintiff has severe mental impairments of bipolar (depressive) disorder and obsessive compulsive disorder that substantially reduce the plaintiff's mental residual functional capacity to "understanding and remembering simple and detailed instructions, and carrying out simple instructions to perform simple, routine, repetitive tasks" and "limited to no more than occasional interaction with

coworkers, supervisors, and the general public" (Tr. 14, 16).

The law judge considered the evaluations of Dr. Gehle and Dr. Stader, who conducted psychological evaluations of the plaintiff in May 2020 and September 2021, respectively, in making this determination. She recounted the evaluations in detail and stated:

> Psychological consultative examiners, Nicholas Gehle, Psy.D., and Sally A. Stader, Ph.D., both opined that the claimant's mental health symptoms appeared to be moderately to severely impacting his activities of daily living, vocational performance, and interpersonal interactions (E3F/5, E5F/5). The undersigned finds that these opinions are only somewhat persuasive, as they are not entirely supported by their respective examinations of the claimant, and they are not consistent with the longitudinal evidence of record.

(Tr. 22).

As reflected in the RFC, the law judge accepted Dr. Gehle's and Dr. Stader's opinions that the plaintiff had moderate limitations in interpersonal interactions. She also included in the plaintiff's RFC accommodations for moderate limitations in concentration, persistence and pace (see Tr. 15, 16). The law judge's findings that Dr. Gehle's and Dr. Stader's opinions of greater limitations are unpersuasive are adequately explained and supported by substantial evidence.

20

Initially, it is noted that Dr. Gehle's and Dr. Stader's opinions are not medical opinions under the regulations. Their opinion of the plaintiff's "vocational performance" essentially opines on the plaintiff's ability to work, which is a decision reserved to the Commissioner. See 20 C.F.R. 416.920b(3)(i). Furthermore, the opinion that the plaintiff's impairments "moderately to severely impact" the plaintiff's mental functioning is not only vague and imprecise, it is not a medical opinion because it fails to opine on what the plaintiff "can still do despite [his] impairment(s)." See 20 C.F.R. 416.913(2)(i)(B) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s)" regarding the "mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.") (emphasis added).

In all events, the law judge evaluated the psychological consultative examiners' assessments as medical opinions. Her decision to partially discount these opinions is adequately explained.

As indicated, Dr. Gehle and Dr. Stader opined that the plaintiff's performance of the activities of daily living is "moderately to

21

severely" impacted due to his mental impairments. The law judge, in rejecting this opinion, recounted Dr. Gehle's report of the plaintiff's activities of daily living:

> At the May 29, 2020 psychological consultative examination (E3F), the claimant … stated he is able to bathe, dress, and toilet independently. The claimant also stated he is able to move around without assistance, is able to drive independently without difficulty, is able to prepare food without assistance, and is able to complete basic household chores without assistance. The claimant stated he can manage money effectively, is able to pay bills, and can complete grocery shopping independently.

(Tr. 17, citing Tr. 399). Dr. Stader's evaluation similarly portrays the plaintiff as adequately performing the basic activities of daily living (Tr. 408). Therefore, substantial evidence clearly supports the law judge's rejection of these opinions as unsupported by Dr. Gehle's and Dr. Stader's evaluations of the plaintiff.

Dr. Gehle and Dr. Stader also opined that the plaintiff's interpersonal interactions and vocational performance were "moderately to severely" impacted by his mental impairments. The law judge, as stated, included in the plaintiff's RFC accommodations for moderate limitations in social interaction and in concentration, persistence or pace. Thus, the law

judge only rejected Dr. Gehle's and Dr. Stader's opinions that the plaintiff's mental impairments are disabling.

In this respect, the law judge discussed that,

[i]n contrast with their opinions that the claimant's [social] functioning is ... severely impaired, the examiners observed [during their evaluations] that the claimant was able to answer questions and provide specific information and dates without difficulty, he exhibited good basic grooming and hygiene, eye contact was adequate, he displayed a positive attitude, and his cooperation and effort were positive (see E3E/2). Dr. Stader noted that the claimant exhibited an anxious attitude, and his behavior was remarkable for obsessive speech and occasional fidgeting (E5F/2), but also noted his cooperation and effort were positive and appropriate. The examiners' mental status examinations documented generally unremarkable functioning, including unremarkable speech content and adequate reasoning and social skills.

(Tr. 22–23).

Additionally, Dr. Gehle and Dr. Stader stated that the plaintiff demonstrated

- adequate attention and concentration
- adequate mental flexibility
- good immediate and remote memory
- adequate abstract reasoning
- adequate judgment
- adequate insight

23

(Tr. 409-410). Therefore, the law judge could reasonably conclude that Dr. Stader's and Dr. Gehle's examinations do not support their opinions that the plaintiff's mental impairments "severely impact" his interpersonal interactions or "vocational performance."

Furthermore, the law judge identified evidence that the consultative examiners' opinions were not consistent with the longitudinal record. The law judge discusses psychiatric treatment notes from June 2020 to January 2022 containing many normal mental status examination findings (see Tr. 21). Additionally, the law judge found persuasive the opinions of the state reviewing psychologists that the plaintiff is able "to carry out simple instructions, was able to sustain attention and concentration, and pace, for simple tasks, and was able to interact and relate with others in a low social demand work setting" (see Tr. 22). Moreover, the law judge emphasized, reasonably enough, that the plaintiff's ability to provide full-time care for his disabled mother is inconsistent with disabling mental functional limitations.

In sum, the law judge identified substantial evidence from which she could reasonably conclude that, despite some abnormalities, the plaintiff's mental functional limitations are not disabling and that Dr.

Gehle's and Dr. Stader's opinions to the contrary are unpersuasive.

The plaintiff asserts several meritless challenges to the law judge's determination. None is meritorious.

The plaintiff argues that "seemingly relevant findings on the mental status report, such as oriented; cooperative; and cognition and intelligence, concentration and speech being within normal limits does not in any way undermine the psychologists' conclusions about how severe [the plaintiff's] mental health limitations were affecting his functioning" (Doc. 11, pp. 18-19). That contention is baseless.

Dr. Gehle and Dr. Stader specified that their opinions are "based on report and <u>clinical observations</u>" (Tr. 401) (emphasis added). Therefore, their overwhelmingly normal clinical observations and mental status examination findings are relevant to the supportability of their opinions.

Furthermore, the regulations direct the law judge to consider objective medical evidence in determining the degree of a claimant's mental limitations, including mental status examination results.   <u>See</u> 20 C.F.R. 416.902(l) (Objective evidence includes "medically demonstrable phenomena that indicate specific psychological abnormalities, <u>e.g.</u>,

abnormalities of behavior, mood, thought, memory, orientation, development, or perception."). Moreover, the law judge could reasonably find that the plaintiff's many normal mental status examination findings are not consistent with disabling mental limitations. See, e.g., Matos v. Commissioner of Social Security, supra, 2022 WL 97144 at *4.

The plaintiff cites to Simon v. Commissioner, Social Security Administration, 7 F.4th 1094, 1107 (11th Cir. 2021), for the contention that statements such as the claimant was "cooperative" during examination, that he exhibited "organized speech" and "relevant thought content," or that he showed "fair insight" and "intact cognition," ordinarily will not be an adequate basis to reject a treating physician's opinion (Doc. 11, p. 19). Simon, however, is inapposite.

As the Commissioner points out, Simon was decided under the prior regulations governing evaluation of opinion evidence, and the revised regulations applicable to the plaintiff's case state that a law judge will not defer or give any specific evidentiary weight to any opinion (Doc. 17, p. 18). Specifically, in Vergara v. Commissioner of Social Security, supra, 2023 WL 5814433 at n*, the Eleventh Circuit stated that the plaintiff's reliance on Simon was misplaced given that Simon's disability application was filed

before March 27, 2017, "and, thus, considered opinion evidence under the treating-physician old rule, a rule inapplicable to Vergara's case." See also Glover v. Commissioner, Social Security Administration, No. 22-10497, 2022 WL 17826364 at *3 (11th Cir. Dec. 21, 2022).

Furthermore, as the Commissioner argues, Simon is substantively distinguishable because, unlike Simon, the consultative examiners' normal mental status examination findings were not the sole basis for the law judge's determination.

Next, the plaintiff argues that the law judge failed to consider mental status examination abnormalities, such as irritability, limited insight, flight of ideas and impulsive behavior (Doc. 11, pp. 17, 22). This argument is meritless.

The law judge discusses several of the plaintiff's abnormal mental status examination findings in the decision but ultimately concluded that the totality of the evidence shows that, while the plaintiff has substantial mental limitations, his mental impairments are not disabling (Tr. 23, 24).[4] That determination is supported by substantial evidence and the court may

---

[4] Contrary to the plaintiff's contention, the law judge is not required to mention every abnormality appearing in the record to show she considered this evidence. See Mitchell v. Commissioner of Social Security, 771 F.3d 780, 782 (11th Cir. 2014).

not reweigh the evidence. <u>See</u> <u>Vergara</u> v. <u>Commissioner of Social Security</u>, <u>supra</u>, 2023 WL 5814433 at *3.

Finally, the plaintiff contends that his GAD, PHQ, FARS and MGAF scores, which reflect mild to severe depression and anxiety, support a finding of disabling mental impairments (Doc. 11, pp. 16, 19-20). The law judge considered this evidence but did not find that it substantiated disabling mental limitations (<u>see</u> Tr. 21). The plaintiff does not show that these scores compelled the law judge to find him disabled.

To the contrary, as the Commissioner points out, he "has declined to endorse GAF scores for use in the disability programs." <u>See</u> <u>Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury</u>, 65 Fed. Reg. 50,746, 50,764-65 (Aug. 21, 2000); <u>Thornton</u> v. <u>Commissioner, Social Security Administration</u>, 597 Fed. Appx 604, 613 (11th Cir. 2015). Furthermore, the GAD and PHQ scores are merely checklists completed by the plaintiff. To the extent that they purport to show disabling limitations, the law judge could reasonably discount their probative value because they are based on the plaintiff's subjective complaints that the law judge did not find fully credible.

In sum, the plaintiff is once again quibbling with the weight the

law judge gave to certain circumstances. However, the plaintiff's citation to some evidence that could support a finding of disability is insufficient because substantial evidence supports the law judge's findings and, therefore, the law judge's resolution of conflicting evidence is entitled to deference. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027; Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158–59 (11th Cir. 2004).

      2.     Physical consultative examiner.

The plaintiff's final contention is that the law judge did not identify substantial evidence supporting her decision to discount Dr. J. Lamour's opinion that the plaintiff is essentially disabled (Doc. 11, pp. 22-25).

On September 8, 2021, Dr. Lamour performed a physical consultative examination of the plaintiff (Tr. 24; Tr. 403–05). Dr. Lamour opined that, "[w]ith regard to claimant's ability to participate in the workplace, he should not be required to stand, to walk, to climb for a long time. He should not be required to bend, to lift, and stoop. He can only do limited work in a seated position" (Tr. 405). Dr. Lamour gives no meaningful explanation for his opinion that the plaintiff is essentially disabled.

The law judge found Dr. Lamour's opinion unpersuasive,

explaining that it is not supported by Dr. Lamour's examination findings nor is it consistent with the overall record (see Tr. 24). That determination is supported by substantial evidence.

Specifically, the law judge stated (id.):

> [Dr. Lamour's opinion] is not supported by Dr. Lamour's own examination findings, including normal sensation, 5 out of 5 motor strength in all extremities, negative bilateral straight leg raise in both seated and supine positions, 5 out of 5 grip strength, manual dexterity within normal limits, and the lack of use of any walking device (E4F/3).

Additionally, the law judge noted Dr. Lamour's findings that the plaintiff's "gait and station were normal" and his "[c]ervical and lumbar spine range of motion was normal, as were range of motion in the claimant's hips, knees, ankles, feet, as well as shoulders, elbows, wrists, and hands" (Tr. 19, see Tr. 404). Thus, the law judge could clearly find that Dr. Lamour's physical examination of the plaintiff, which was essentially normal, does not support Dr. Lamour's opinion that the plaintiff is essentially disabled. See, e.g., D'Andrea v. Commissioner of Social Security Administration., 389 Fed. Appx. 944, 948 (11th Cir. 2010) (stating that "the ALJ had ample reason for rejecting the consulting physician's RFC assessment [because] the physician's own clinical findings undermined the assessment").

The law judge also found Dr. Lamour's extreme opinion was not consistent with "the longitudinal records, and the [plaintiff's] ability to perform basic activities of daily living while caring for his mother" (Tr. 24; supra, pp. 9-12). See Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 873 (11th Cir. 2011) (discounting weight given to a physician's opinion that is contradicted by the claimant's daily activities); Raper v. Commissioner of Social Security, supra, 89 F.4th at 1278-79 (The law judge may consider normal clinical examination findings in discounting a medical opinion.). The law judge also found partially persuasive the opinions of two state reviewing physicians who opined that the plaintiff could perform a range of light work. Therefore, the law judge's finding that Dr. Lamour's opinion is unpersuasive is supported by substantial evidence.

The plaintiff speculates that Dr. Lamour's extreme opinions are attributable "to the combination of [the plaintiff's] imaging studies and description of pain" (Doc. 11, p. 23). That speculation does not undermine the law judge's decision to discount Dr. Lamour's opinion.

Dr. Lamour was aware of the plaintiff's first MRI and the resulting diagnoses (Tr. 403). However, it is the functional limitations from an impairment, and not its diagnosis, that is determinative in an evaluation

of disability (see supra, pp. 13-14). Thus, the MRI results, in themselves, do not establish that the plaintiff's impairments are physically disabling. To the contrary, the reviewing physicians opined that they are not.

Furthermore, the law judge was not required to accept uncritically the plaintiff's description of pain to Dr. Lamour in determining the weight to give Dr. Lamour's extreme opinions because the law judge found that the plaintiff was not fully credible. See Majkut v. Commissioner of Social Security, 394 Fed. Appx. 660, 664 (11th Cir. 2010) (The law judge was not required to accept the opinion of a treating physician based upon the plaintiff's subjective complaints when the plaintiff was not fully credible.).

The plaintiff argues further that a physician, not the law judge, determines a plaintiff's limitations (see Doc. 11, pp. 23-24). The plaintiff misapprehends the law. It is well-established that it is the law judge's responsibility to determine the plaintiff's RFC, and she is not required to base the plaintiff's RFC finding on a physician's opinion. See 20 C.F.R. 416.920c(a); Cooper v. Astrue, 373 Fed. Appx. 961, 962 (11th Cir. 2010) ("The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor."). This distinction is even greater under the new regulations, which specify that a law judge "will not defer" to the opinion of

a medical source. 20 C.F.R. 416.920c(a). In this case, the law judge performed her duty to assess the evidence in accordance with the regulations.

Finally, the plaintiff challenges the law judge's statement that Dr. Lamour's opinion is not consistent with the updated medical findings (Doc. 11, p. 24; see Tr. 24). Specifically, the law judge stated:

> Notably, despite the severity of the limitations assessed, Dr. Lamour's corresponding examination findings are also not consistent with the updated record, including lumbar examinations revealing painful extension, positive straight leg raise testing, left sciatic notch tenderness, midline and paraspinal tenderness, decreased sensation in the left L4-S1 distributions, and weakness in the left tibialis anterior and extensor hallucis longus muscles (E8F/3; see also E7F, E9F). The undersigned notes that despite the positive physical exam findings, the record indicates that the claimant's gait was at worst, antalgic, but has at no point required any assistive devices (see E1F/3; E2F/3; 9F/18, 34).

(Tr. 24)

Although inartfully stated, the law judge's point appears to be that, even with positive clinical findings, no other physician has opined that the plaintiff's physical impairments are disabling. Therefore, Dr. Lamour's extreme opinion based on an essentially normal examination is anomalous. Regardless, even disregarding this observation by the law judge, she stated

substantial evidence for rejecting Dr. Lamour's opinion.    See Epps v. Social Security Administration, Commissioner, supra, 2024 WL 20837 at *7 citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) ("[O]ne discrepancy does not undermine the ALJ's overall evaluation of [the physician's] opinion"); Stultz v. Commissioner of Social Security, 628 Fed. Appx. 665, 668, n. 4 (11th Cir. 2015) (Because the ALJ's other two reasons are sufficient, the error does not change our decision.).

It is, therefore, upon consideration,

ORDERED:

That the Commissioner's decision is hereby affirmed. Consequently, the Clerk shall enter judgment for the Commissioner of Social Security and close the case.

DONE and ORDERED at Tampa, Florida, this 25ᵗʰ day of March, 2024.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE